C. E. HAAS, Court Clerk Tillman County, Oklahoma, Plaintiff in Error,

v.

Haskell A. HOLLOMAN, County Judge, Defendant in Error.

No. 38096

Supreme Court of Oklahoma.

July 8, 1958.

656

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., Amos Stovall, County Atty. of Tillman County, Frederick, for plaintiff in error.

Wilson, Wilson & Massad, by John B. Wilson, Jr., Frederick, for defendant in error.

WELCH, Chief Justice.

This is an appeal by the Court Clerk of Tillman County, Oklahoma, from a judgment of the district court of said County, wherein a writ of mandamus was issued to the court clerk directing him, under the authority of House Bill No. 960, Laws 1957, p. 104, to make the monthly payments therein provided to the County Judge.

The District Court in said judgment made a finding that House Bill 960 of the Twenty-sixth Legislature is constitutional and that it is a general bill as defined by the Constitution of the State of Oklahoma.

As against that decision it is asserted that H.B. 960 is a local and special law. The constitutionality of the act depends upon whether it is a general law or a local and special law. If it is a local and special law it is unconstitutional and invalid, while if it is a general law it is constitutional and valid. That is the question for our consideration and determination. (It being agreed that this act was not treated, published or passed in the manner required of local or special laws in the Constitution.)

The Act provides as follows:

"In all counties of this State having a population of not less than seventeen thousand (17,000) nor more than eighteen thousand (18,000) according to the Federal Decennial Census of 1950, and having a net valuation of not less than Sixteen Million Dollars ($16,000,000.-00) in the year 1956, the County Judges shall be paid in addition to the regular statutory salary from the Court Fund of said counties a sum sufficient to make the total annual salary amount to the sum of Five Thousand Four Hundred Dollars ($5,400.00) to be payable monthly, as compensation for the additional duties to be performed by such County Judges as provided in this Act. * * *

"In addition to the duties otherwise provided by law, the County Judge in all counties, as provided in Section 1 of this Act, shall be required to supervise all juveniles who are either on parole or serving probationary terms. The County Judge shall also supervise dependent and neglected children who are wards of the County Courts."

■ In reference to population and assessed valuation classification of House Bill 960, the court will take judicial notice of the fact that there are only three counties of the State having a population under the 1950 Federal Decennial Census, of not less than 17,000 nor more than 18,000, same being Tillman County, with a population of 17,598; Washita County with a population of 17,657, and McIntosh County, with a population of 17,829, and that Tillman County is the only one of said three counties which has a net assessed valuation in the year 1956 of not less than $16,000,000; McIntosh County having a net assessed valuation in 1956 of $7,643,535, and Washita County having a net assessed valuation in 1956 of $15,052,471.

Thus it is apparent that this act was designed to have effect only in Tillman County, and that the act can and will affect that county only, to the same result in that re

gard as if the act had named Tillman County in lieu of purporting to name or designate a classification by population and assessed valuation.

The defendant in error contends that this is a general law, therefore this is the only question for the court to determine.

It is urged at some length, and with statements which might very well be convincing that salaries of County Judges, and the salary of the County Judge of Tillman County are too small under the general salary act; that this act accomplishes a wholesome and very valuable purpose in Tillman County, and it might be conceded that it is so. That, however, would be immaterial in passing upon this constitutional question. In Hudgins v. Foster, 131 Okl. 90, 267 P. 645, where this court considered a question related to the one here involved, and where this court held the legislative act invalid, this court said:

"Preliminary to the discussion of the main issue in this case, it will be observed that courts do not concern themselves as to whether an act of the Legislature is wholesome and salutary in its operation or whether such legislation is unwise and harmful. The judicial department of the government can interfere with legislative action only when it clearly appears that a given act thereof contravenes the basic law of the state and for that reason is unconstitutional and void. * * *"

■ In support of his contention that this is a general law the defendant in error has cited many authorities, most of which hold that the courts should not annul, as contrary to the Constitution, a statute passed by the Legislature, unless it can be said of the statute that it positively and certainly is opposed to the Constitution. We agree with this as an elementary rule for the courts to follow.

We are familiar with former decisions in Morrison v. Fry, 208 Okl. 239, 255 P.2d 270; Lowden v. Oklahoma County Excise Board, 186 Okl. 706, 100 P.2d 448, and Bell v. Crum, 188 Okl. 67, 106 P.2d 518, cited in brief of defendant in error. However, there is a distinction between those cases and the one presented here. It is obvious the legislation referred to in these cases was for the purpose of covering a bracket which was out of proportion in population with other counties, and due to this fact required much more work for the officers covered, and that such legislation does not fall under the general county officers salary act. It is obvious from the population figures set out in the acts questioned in the above cases that there was a distinctive characteristic upon which a different treatment could be reasonably founded and which furnished a practical and real basis for discrimination.

The Legislature in the county officers general salary act in its wisdom provided salaries for county officers such as the one provided for in this act on a sliding scale basis, based upon population and valuation of the various counties of the state.

With the passage of the act here involved the Legislature left the salary of county judges in many counties with higher population and greater valuations, as provided for in section 179.6, Title 19, 1957 Supp., O.S. 1951, to receive smaller salaries than the County Judge of this County.

For the reasons heretofore stated the act here under consideration could not possibly "have a uniform operation throughout the State," as is required of all acts before they can be classified as general laws by provisions of our Constitution, Art. 5, Sec. 59.

■ We held in Key County Election Board of Oklahoma County v. Donnell, 107 Okl. 157, 231 P. 546:

"The Act approved March 28, 1923, C. 224, S.L. 1923, p. 389, relating to justices of peace in cities having a population of over 90,000 according to last federal census, and fixing the number of justices of peace to be elected at four, without repealing section 3424, C.O.S. 1921 [39 O.S. 1951 § 4] which provides in all cities of more than 2,500 population two justices of peace shall be elected, and in cities of more than 25,000 population, there shall be

elected an additional justice for each 10,000 inhabitants or fractional part; thereof placing Oklahoma City, with over 90,000 population, in a class with cities having between 35,000 and 45,000 population and less than cities having between 45,000 and 90,000 population amounts to an arbitrary and capricious classification, and is a special and local act, and is in violation of section 59, art. 5 of the Constitution and is void."

In the body of that opinion this court referred to a statement made by the Supreme Court of Minnesota, in the case of State ex rel. Douglas v. Ritt, 76 Minn. 531, 79 N.W. 535, 536, wherein the Court stated as follows:

"Judging from much recent legislation in this state, it would seem that the impression is prevalent that because classification on the basis of population may be proper for the purposes of legislation on certain subjects, therefore any classification on the basis of population is appropriate for the purposes of legislation on any subject. The sooner the minds of legislators and others are disabused of this erroneous impression, the better; for under any such rule the provisions of the constitution against special legislation would become wholly nugatory. If it is permissible to adopt for any and all purposes a classification founded upon any and every arbitrary and illusive basis of population, we might have as many acts, general in form, but special in fact, as there are counties, cities, villages, townships, wards, and school districts in the state. It ought to be apparent to any one on a moment's reflection that under the rules above stated classification on the basis of population may be appropriate for one purpose, and not for another; that is, for legislation upon one subject, and not for legislation upon another."

■ In Roberts Board of Commissioners of Craig County v. Ledgerwood, 134 Okl. 152, 272 P. 448, 452, this court held:

"Where an act of the Legislature excepts from the operation of the general laws of this state one or more counties without any fixed basis for such discrimination, and no good reason is shown why all should not be subject to the same rule, it is invalid under section 59, article 5 of the constitution, which provides laws of a general nature shall have uniform operation throughout the state."

Also see Hudgins v. Foster, 131 Okl. 90, 267 P. 645; Guthrie Daily Leader v. E. D. Cameron, 3 Okl. 677, 41 P. 635; Board of Commissioners of Oklahoma County v. Beaty, 67 Okl. 281, 171 P. 34; Thompson v. Stanley, 183 Okl. 445, 83 P.2d 386; Caddo County v. Chicago, R. I. & P. Ry Co., 155 Okl. 32, 7 P.2d 900; In Re Bucher, County Attorney, 162 Okl. 168, 20 P.2d 150; Wade v. Board of Commissioners of Harmon County, 161 Okl. 245, 17 P.2d 690; Excise Board of Kaly County v. Chicago, R. I. & P. Ry. Co., 155 Okl. 34, 7 P.2d 902.

In view of the above authorities, we are of the opinion the population and valuation set forth in H.B. 960 is insufficient to constitute a good or sound reason as to why the county judge of this county should receive an increase in salary, and other counties with greater population and higher valuations be denied, and that such so-called classification is wholly insufficient to establish this act as a general law having a "uniform operation throughout the State."

■ Where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation, as between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnished a practical and real basis for discrimination. Roberts v. Ledgerwood, supra.

■ Other questions are brought to bear against the validity of this act, H.B. 960, but we deem it unnecessary to consider

them since we have determined that this is a local and special law, and not a general law and is therefore in violation of the Constitution, Article 5, Section 59, Section 32 and Section 46.

Therefore, and for the reasons stated, H.B. 960, is unconstitutional and is invalid and no rights may be asserted thereunder. It follows that the trial court judgment is in error and the same is reversed, and the cause remanded with directions to vacate the judgment rendered for the plaintiff, and to deny and dismiss plaintiff's action.

Reversed.