**Archie BURCH, Appellant,**

v.

**Stephen KAISER, Warden, Appellee.**

**No. 72010.**

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 30, 1990.

Archie Burch, Lexington, pro se.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## MEMORANDUM OPINION

BAILEY, Judge:

Appellant Archie Burch (Appellant or Inmate) seeks review of the Trial Court's denying Inmate's Petition for Writ of Habeas Corpus/Mandamus, by which Inmate sought relief from the administrative imposition of sanctions for alleged misconduct. Herein, Inmate asserts in essence (1) violation of his due process and equal protection guarantees in the conduct of the Department of Corrections' administrative hearing and review process, and (2) insufficiency of the evidence to support imposition of sanctions.

Inmate asserts that while housed at the Jess Dunn Correctional Center, his unit manager, Mr. Dan Reed, moved him from the medical unit to another dormitory for medical reasons. The next day, another staff member, Ms. Delores Campbell, directed Inmate to move back to the medical unit, to which order Inmate allegedly responded "F__k all you punks."

Ms. Campbell filed an offense report concerning the occurrence, charging Inmate with "disrespect to staff/using abusive/obscene language to staff member" in contravention of prison rules and regulations. A copy of the offense report was delivered to Inmate. An investigator obtained statements from witnesses, including Mr. Reed.

Reed represented that Campbell was "following his directions," but that Reed had not witnessed the confrontation between Inmate and Ms. Campbell. The remaining witnesses, predominantly other inmates, professed, in essence, that Inmate had used no profanity with Ms. Campbell.

Hearing on the offense report was held in front of Mr. Reed as Hearing Officer. Inmate was found guilty of misconduct, and penalized by loss of 180 earned credits. Inmate appealed to the Warden and Director of the Department of Corrections, respectively, asserting that Mr. Reed was "directly involved" in the incident, and therefore was disqualified as Hearing Officer under specific written prison policy. Inmate's administrative appeals were denied, and Inmate was thereafter transferred from Jess Dunn Correctional Center, a minimum security facility, to Lexington Correctional Center, a medium security facility.

Inmate then filed his Petition for Writ of Habeas Corpus/Mandamus in Cleveland County District Court, asserting violation of his due process and equal protection rights in the conduct of hearing before the "involved" Mr. Reed, and seeking reversal of imposition of administrative sanctions, as well as reclassification to minimum security. In denying Inmate relief, the Trial Court found:

> [The] [p]leadings herein reflect [a] disciplinary hearing before a hearing officer who was not a witness to [the] alleged misconduct, who apparently weighed conflicting evidence and found against [Inmate]; [the] pleadings further seem clear as to reasons for finding of guilt. [Inmate's] request for writ is therefore denied.

Inmate appeals as aforesaid.

In his first proposition, Inmate asserts denial of his due process rights by the conduct of the disciplinary hearing before Mr. Reed as hearing officer. Hereunder, Inmate argues that Mr. Reed, having issued the order for Inmate's change of dormitory, was "directly involved" in the incident underlying the charged offense, thereby denying Inmate a fair and impartial

hearing violative of due process guarantees. In his second and fourth propositions, Inmate attacks the sufficiency of the evidence of misconduct. In his third proposition, Inmate attacks the facial validity of the order of guilt and imposition of sanctions as lacking sufficient specificity of the grounds for determination of guilt and imposition of sanctions.[1]

As an initial matter, we find no specific statutory authority in Oklahoma providing for judicial review of Department of Corrections administrative actions in dealing with inmate misconduct. However, our Supreme Court has recognized that "[w]hile statutory law does not authorize review of actions of prison officials in dealing with internal breach of discipline, claims for vindication of *constitutionally-protected interests*, which may arise from prisoner misconduct disputes, must receive judicial scrutiny by the command of the Federal Government's fundamental law." *Prock v. Dist. Ct. of Pittsburg Cty.*, 630 P.2d 772, 774 (Okl.1981) (Emphasis added.) Thus:

> The test for gauging a prisoner's claim to a due-process-mandated administrative hearing that precedes imposition of disciplinary sanctions is whether his liberty or property interest was in fact threatened with invasion.

*Prock*, 630 P.2d at 776.

Therefore, and because the state has recognized by statute a liberty interest in the adjustment of earned credits, subtraction of earned credits must be preceded by due process. 57 O.S. Supp.1984 § 138; *Mitchell v. Meachum*, 770 P.2d 887 (Okl.1988); *Prock*, 630 P.2d at 776. However, an inmate has no protectable interest in the situs of his confinement. *Morris v. Meachum*, 718 P.2d 1354 (Okl.1986). We similarly believe an inmate has no protectable interest in his security rating for purposes of determining whether inmate should be housed in a minimum or medium security facility. In the instant action, we are thus confined to review of Inmate's allegations pertinent to the conduct of Inmate's disciplinary hearing.

The due process prerequisites for invocation of the forfeiture-of-earned-credits provision of § 138 are not defined in the statute, but in *Mitchell*, our Supreme Court recognized the minimum requirements of procedural due process articulated by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) as applicable in this state:

> *Wolff* requires in the context of state prison disciplinary proceedings that the inmate must be afforded: (1) advance written notice of the claimed violation; (2) a written statement by the fact-finder as to the evidence relied on and the reasons for the disciplinary action; and (3) the right to call witnesses and present documentary evidence in his defense when permitting [the inmate] to do so would not be unduly hazardous to institutional safety or correctional goals.

*Mitchell*, 770 P.2d at 890.

In that regard, we have no doubt that due process guarantees also require "that disciplinary proceedings be conducted before an impartial tribunal." *Edwards v. White*, 501 F.Supp. 8, 11 (MD Pa.1979) (associate warden, the subject of inmates' class action removal petition, disqualified as member of disciplinary tribunal under

---

1. A recent decision of the Oklahoma Supreme Court raises some question as to appellate jurisdiction to entertain an inmate's appeal from District Court denial of review of imposition of administrative sanctions. See, *State ex rel. Henry v. Mahler*, 786 P.2d 82 (Okl.1990) (held, issue of application of amendment to earned credit statute to defendants committed before amendment as prohibited *ex post facto* legislation, raised in application for post-conviction relief, addressed to exclusive jurisdiction of Court of Criminal Appeals). However, because the instant case involves review of prison "administra- tive procedure" under which Inmate's earned credits were deducted, in view of the Oklahoma Supreme Court's historical acceptance for review of this type of appeal, we deem the instant case within our appellate cognizance and proceed under the prior precedential pronouncements of our Supreme Court pertinent thereto. *Mahler*, 786 P.2d at 84–87. See also, e.g., *Mitchell v. Meachum*, 770 P.2d 887 (Okl.1988); *Morris v. Meachum*, 718 P.2d 1354 (Okl.1986); *Prock v. Dist. Ct. of Pittsburg Cty.*, 630 P.2d 772 (Okl. 1981).

court's prior order prohibiting investigatory participants or witnesses from serving on hearing panel). However, it has also been recognized with regard to this issue:

> In some circumstances, the nature of one's position or the relationship between that position and the outcome of adjudications disqualifies a person from serving with impartiality mandated by the Due Process Clause. (Citations omitted.) But the fact that a decision-maker has responsibilities to uphold standards of conduct does not inevitably mean that he is disqualified from adjudicating allegations that those standards have been breached. (Citations omitted.) In *Wolff v. McDonnell,* the Supreme Court rejected a due process challenge to the impartiality of a prison discipline committee whose chairman was the Associate Warden for Custody. (Citations omitted.) We conclude that prison officials responsible for maintaining security are not disqualified by the Due Process Clause from adjudicating allegations of breaches of prison security solely by the nature of their positions.

*Powell v. Ward,* 542 F.2d 101, 103 (2d Cir.1976).

Thus, as we read the authorities, whether a given prison official is disqualified from service on a prison disciplinary panel under the Due Process Clause by reason of "the nature of one's position or the relationship between that position and the outcome of [the] adjudication," that is whether an official is "involved," must necessarily turn on the facts and circumstances of each particular case.

■ In the instant case, we find that while Mr. Reed was involved with Inmate's change of dormitory, Mr. Reed had absolutely no involvement in nor apparent knowledge of Inmate's confrontation with Ms. Campbell which gave rise to the offense with which Inmate was charged. Further, we find that any tangential involvement Reed may have had through his order for Inmate's change of dormitory does not bear on the offense with which Inmate was charged, that is "disrespect of staff/use of abusive/obscene language" directed to Ms. Campbell. Under these circumstances, we find no facts giving rise to grounds for disqualification of Reed as hearing officer, nor constitutional deprivation arising therefrom. While clearly, the "cleaner" approach would have been appointment of a hearing officer with absolutely *no* involvement, tangential or otherwise, to hear Inmate's case, we find no demonstrable violation of Inmate's constitutional right to a fair and impartial hearing in the instant case warranting judicial interference.

■ Further, in the present case, we find the minimum due process standards were met with regard to notice of the charge and the factual findings thereon, in that Inmate was provided with written notice in advance of claimed violations in the form of the offense report, and a copy of the disciplinary hearing disposition form stating the evidence relied upon and reasons for the disciplinary action with sufficient "reasonable" specificity. See, *Chavez v. Rowe,* 643 F.2d 1281 (7th Cir.1981); *U.S. ex rel. Speller v. Lane,* 509 F.Supp. 796 (SD Ill.1981). Inmate had the opportunity to call witnesses and present evidence in his defense. We therefore find no deprivation of Inmate's constitutional rights or facial invalidity of the Hearing Officer's order determining Inmate's guilt of misconduct and imposition of sanctions.

■ Ultimately, actions of prison disciplinary boards will be affirmed if the findings of the prison disciplinary board are supported by some evidence in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). We find some evidence, although conflicting, and in spite of Inmate's challenge to parts thereof as hearsay, to support a finding of guilt on the offense charged and imposition of administrative sanctions, and we further find no constitutional deprivation as alleged by Inmate warranting grant of extraordinary relief. *Hill,* 472 U.S. at 453–457, 105 S.Ct. at 2773–2775. See also, e.g., *McDonald's Corp. v. Okla. Tax Comm.,* 563 P.2d 635 (Okl.1977) (strict rules of evidence do not apply in administrative hearings); *Wolff,*

418 U.S. at 556, 94 S.Ct. at 2975 (inmate not entitled to "full panoply of rights due a defendant in" criminal prosecution).

The order of the Trial Court is therefore AFFIRMED.

ADAMS, P.J., and MacGUIGAN, J. concur.